IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE W. MATHIAS,                    :     CIVIL ACTION
                                      :     NO. 16-1846
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
CATERPILLAR, INC., et al.,            :
                                      :
          Defendants.                 :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 29, 2016


     This Employee Retirement Income Security Act, or

ERISA, action arises out of a billing dispute related to the

retirement of Plaintiff George Mathias. Plaintiff alleges that

his health insurance plan, Defendant Caterpillar, Inc. Retiree

Group Insurance Plan (the "RGIP"), which is sponsored by

Defendant Caterpillar, Inc., mistakenly under-billed him for

premium payments for several years. Then, when Plaintiff could

not pay the accumulated sum that he owed, the RGIP improperly

terminated his benefits.

     Before the Court is Defendants' motion to transfer

this matter to the United States District Court for the Central

District of Illinois, based on a forum selection clause in the

RGIP. ECF No. 6. In the alternative, Defendants argue that this

Court is an "inappropriate forum," because (1) Plaintiff lives

and worked in York County, Pennsylvania, which is located within

the Middle District of Pennsylvania, and (2) the administration

of the ERISA plans primarily occurred in the Central District of

Illinois, where Caterpillar's central offices are located. Still

in the alternative, Defendants also move to dismiss Plaintiff's

claims pursuant to Federal Rule of Civil Procedure 12(b)(6) as

time-barred and otherwise not cognizable under ERISA. For the

reasons that follow, the Court will enforce the RGIP's forum

selection clause and transfer this matter, pursuant to 28 U.S.C.

§ 1404(a), to the Central District of Illinois.

## I.    FACTUAL BACKGOUND

Plaintiff, who currently resides in Hanover,

Pennsylvania, worked as a machine tool operator for Defendant

Caterpillar, Inc., beginning in 1978, most recently in

Caterpillar's York, Pennsylvania, plant. Compl. ¶¶ 1, 13.

Defendants Caterpillar, Inc.; Caterpillar, Inc. Group Insurance

Plan A; Caterpillar, Inc. Group Insurance Plan B; and

Caterpillar, Inc. Retiree Group Insurance Plan are the "plan

administrator" and "plan sponsor" within the meaning of ERISA,

29 U.S.C. § 1002(16)(A), (B). Id. ¶ 4. Caterpillar, Inc. is an

Illinois corporation with its headquarters in Illinois. Id. ¶ 3.

In the Complaint, Plaintiff alleges that he "went out
on disability in 1997" due to chronic, severe chest pain that he
suffered after undergoing a quintuple coronary artery bypass
surgery, which required him to take narcotic drugs. Id. ¶¶ 13-
17. From 1997 until approximately 2013, Plaintiff was covered
"by Defendant's health insurance plans as an employee on long-
term disability, and [paid] insurance premiums at the disabled
employee rate." Id. ¶ 18.

On September 5, 2012, Plaintiff retroactively retired
effective October 1, 2009. Compl. ¶¶ 28(a), 31; Compl. Ex. O at
2. Due to an "administrative oversight," Caterpillar continued
to provide Plaintiff with "health care benefits under [one of
the employee health care plans] as an employee on disability"
through May 2013. Compl. ¶ 33(a), (c). For the period from
October 1, 2009, to May 2013, Caterpillar billed Plaintiff for
health insurance benefits at the lower employee premium rate,
rather than at the higher premium rate charged to retirees. Id.
¶¶ 31-32.

In May 2013, Caterpillar corrected the administrative
error, and properly classified Plaintiff as a retiree on and
after September 30, 2009. Id. ¶¶ 28(a), 33(c). Caterpillar then
refunded Plaintiff his employee premiums and billed him for the
higher retiree premiums he should have been paying beginning on
October 1, 2009, the date of his retirement. Id. ¶¶ 21, 33; Ex.

O at 3. The amount Plaintiff owed was $9,513.13. Compl. ¶ 33(d);
Ex. O at 3.

Faced with this invoice, Plaintiff filed an
administrative claim under the RGIP. Id. Ex. O at 1. On October
1, 2013, the Plan Administrator denied the claim. Id. The denial
letter explained that upon Plaintiff's retirement, he became
eligible for retiree benefits, which required higher premiums.
Id. at 2-3. Although the Plan Administrator admitted that the
billing error resulted from an "administrative oversight,"
Plaintiff was nonetheless obligated to pay the premium amounts
he should have paid as a retiree. Id. at 3. The Plan
Administrator extended the deadline for Plaintiff to make
payment until a "final decision is made on appeal if Mr. Mathias
files an appeal." Id. at 3 n.5.

On March 28, 2014, Plaintiff filed an appeal of the
denial. On April 25, 2014, the Caterpillar Benefits Appeals
Committee denied the appeal. Kyleen Martin Decl. Ex. F at 1, ECF
Nos. 6-10.[1] The Committee determined that the administrative
mistakes "were the result of processing a retroactive
retirement, which is an atypical process," and that Plaintiff

---

[1]     At the August 17, 2016 hearing on the motion to
dismiss, Plaintiff conceded that the documents attached to
Kyleen Martin's Declaration are true and correct copies of
documents contained in Plaintiff's benefits file and that the
Court may consider the contents of these documents in deciding
Defendants' motion to transfer.

was still required to pay the retiree premium amounts for the period beginning on October 1, 2009. Id. at 3. The Committee further noted that it "has the authority and the fiduciary obligation to interpret and enforce the terms of [the Plans] as written, including the provisions regarding the determination of and the payment of premiums, and the authority and obligations to decide questions of eligibility for participation in the plans." Id.

The appeal denial letter pointed out to Plaintiff that "[p]ursuant to the terms of the [RGIP], any court action to (a) recover plan benefits or (b) enforce or clarify rights under Section 502 of ERISA[] must be commenced within six months after the date of this letter and such action must be brought in the U.S. District for the Central District of Illinois where RGIP is administered." Id. at 6. As discussed below, this directive was contained in the plan documents in effect at the time Plaintiff agreed to accept benefits under the RGIP.

Plaintiff did not file this action until nearly two years later, on April 19, 2016. See ECF No. 1. He brings two counts in his complaint. First, he alleges that the termination of his health care benefits was "arbitrary and capricious" because, among other things, the "accumulation of premiums was due to [Defendants'] own mistake, and not any misconduct on the part of the Plaintiff." Compl. ¶ 41. He therefore seeks payment

of his health insurance premiums, reinstatement of his health insurance benefits, reimbursement for health care expenses which should have been paid under the Plan, and attorney's fees and costs pursuant to 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (g)(1). Second, he alleges, pursuant to 29 U.S.C. § 1132(l)(1)(A), that Defendants breached their fiduciary duty by, among other things, "ignor[ing] uncontradicted evidence of Mathias having paid all of his premiums required under the circumstances"; "terminat[ing] benefits where there was no evidence to support a change in the Defendants' prior determination of Mathias' status as a beneficiary of the Plan"; "allow[ing] the existence of a conflict of interest, namely, the fact that Defendants' benefits are funded directly out of Caterpillar's operating income, to adversely impact the neutrality of the decision making process"; and "breach[ing] numerous procedural errors that adversely [a]ffected the decision making process." Id. ¶ 44.

## II.   PROCEDURAL HISTORY

On April 19, 2016, Plaintiff filed an application to proceed in forma pauperis, attaching the Complaint. ECF No. 1. The following day, the Court granted Plaintiff leave to proceed in forma pauperis, and Plaintiff filed his Complaint. ECF Nos. 2, 3.

Defendants filed a joint Motion to Transfer or Dismiss on July 7, 2016. ECF No. 6. Plaintiff filed a response in opposition thereto on July 20, 2016. ECF No. 7.

The Court held a hearing on Defendants' motion on August 17, 2016. ECF Nos. 9, 10. At the hearing, the Court explained that it would consider only the motion to transfer at this time, because arguments made in connection with the motion to dismiss would be better addressed by the transferee forum in the event that transfer was ordered.[2]

## III. MOTION TO TRANSFER

Defendants submit that the RGIP contains a forum selection clause requiring this suit to be brought in the United States District Court for the Central District of Illinois. They explain that the RGIP, Martin Decl. Ex. A at § 5, ECF No. 6-3, incorporates the claims procedure found in the Caterpillar Retiree Benefit Plan, id. Ex. C at §§ 10.1-10.5. The claims procedure, in turn, contains a forum selection clause requiring that "[a]ny court action to recover Program benefits, or to enforce or clarify rights under the Program under section 502 of

---

[2]    After the hearing, the Court permitted the parties to submit letter briefs addressing the applicability of the Supreme Court's decision in Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 581 (2013), which both parties had failed to consider in their initial submissions.  Subsequently, both parties submitted letter briefs in support of their respective positions, which the Court has considered. ECF Nos. 13, 14.

ERISA . . . be brought in the U.S. District Court for the
Central District of Illinois, where the Program is
administered." Id. at § 10.5. Defendants ask the Court to
enforce the RGIP's forum selection clause and transfer this case
to the Central District of Illinois. Defs.' Mot. Transfer at 7,
ECF No. 6.

Pursuant to 28 U.S.C. § 1404, a district court may
transfer an action to any other district "where it might have
been brought," so long as the transfer is "[f]or the convenience
of parties and witnesses" and "in the interest of justice." 28
U.S.C. § 1404(a).

Ordinarily, in a case not involving a forum selection
clause, a court evaluates a § 1404(a) motion using such factors
as the convenience of the parties and the relevant public
interests. Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.
Dist. Tex., 134 S. Ct. 568, 581 (2013). "The calculus changes,
however, when the parties' contract contains a valid forum-
selection clause, which 'represents the parties' agreement as to
the most proper forum.'" Id. (quoting Stewart Org., Inc. v.
Ricoh Corp., 487 U.S. 22, 31 (1988)). Because forum selection
clauses are "'bargained for by the parties,'" "'a valid forum-
selection clause [should be] given controlling weight in all but
the most exceptional cases.'" Id. (alteration in original)
(quoting Stewart, 487 U.S. at 33).

Accordingly, courts conduct a two-part analysis when deciding whether to enforce a forum-selection clause.

First, the district court must determine whether the forum selection clause is valid and enforceable.[3] See <u>Atl. Marine</u>, 134 S. Ct. at 581 n.5. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," or obtained by "fraud, undue influence, or overweening bargaining power." <u>Foster v. Chesapeake Ins. Co.</u>, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10, 12 (1972)).

Second, a court must consider whether, pursuant to § 1404(a), "extraordinary circumstances" militate against enforcing the forum selection clause. <u>Atl. Marine</u>, 134 S. Ct. at 581. In considering whether such extraordinary circumstances exist, a court may consider "arguments about public-interest factors only," <u>id.</u> at 582, including "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law,'" <u>id.</u> at 581 n.6 (alteration in

---

[3]      In <u>Atlantic Marine</u>, the Supreme Court presupposed a valid forum selection clause because validity was not disputed by the parties in that case. 134 S. Ct. at 576, 581 n.5.

original) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235,
241 n.6 (1981)). The public interest factors must
"overwhelmingly disfavor a transfer" to overcome the forum
selection clause. Id. at 583.

Under the Atlantic Marine framework, "the plaintiff's
choice of forum merits no weight." Id. at 581. Likewise, the
court "should not consider arguments about the parties' private
interests." Id. at 582. This is because "[w]hen parties agree to
a forum-selection clause, they waive the right to challenge the
preselected forum as inconvenient or less convenient for
themselves or their witnesses, or for their pursuit of the
litigation." Id. at 582; see also Bremen, 407 U.S. at 17-18
("Whatever 'inconvenience' [the parties] would suffer by being
forced to litigate in the contractual forum as [they] agreed to
do was clearly foreseeable at the time of contracting.").

Finally, and unlike the burden-shifting paradigm under
ordinary § 1404(a) transfers, "the party defying the forum-
selection clause . . . bears the burden of establishing that
transfer to the forum for which the parties bargained is
unwarranted." Id. at 581.

In deciding the motion to transfer, the Court
therefore proceeds under the Atlantic Marine framework.

A.    The Forum Selection Clause is Valid and Enforceable

First, the Court considers the validity and enforceability of the forum selection clause. Foster, 933 F.2d at 1219.

At the hearing, Defendants argued that Plaintiff agreed to the various terms of the RGIP, including the forum selection clause and other provisions of the claims procedure requirements, in exchange for the receipt of health insurance benefits as a Caterpillar retiree. They noted that Plaintiff was not mandated to accept the health insurance benefits provided by Caterpillar to its retired employees and that many Caterpillar retirees indeed choose not to accept benefits under the RGIP, instead obtaining health insurance benefits through the Medicare program or by buying health care on the marketplace. Plaintiff does not dispute these propositions or otherwise suggest that the RGIP's forum selection clause was procured by "'fraud, undue influence, or overweening bargaining power.'" Id. (quoting Bremen, 407 U.S. at 12).

Instead, Plaintiff argued that he lacked notice of the forum selection clause, because Caterpillar did not provide him with a plan summary document or a copy of the RGIP document containing the claim procedure. Plaintiff further argues that he "had no part" in negotiating the terms of the RGIP. Pl.'s Supp'l Letter Br. at 1, Aug. 17, 2016. Plaintiff suggests that the lack

of notice and arm's length negotiations on his part renders the

forum selection clause unfair and unenforceable.

First, a forum selection clause need not be the result

of arm's length negotiations so long as the clause is

fundamentally fair. See Carnival Cruise Lines, Inc. v. Shute,

499 U.S. 585, 595 (1991) (holding that forum selection clauses

must be scrutinized for "fundamental fairness," and may be

deemed unfair if inclusion of the clause was motivated by bad

faith, if "accession to the forum clause" was obtained "by fraud

or overreaching."). Here, Plaintiff agrees that his acceptance

of the health insurance benefits was entirely voluntary and

nothing in the forum selection clause cries of unfairness. Faced

with the now increasingly rare situation in which an employer

offers its retired former employees health care benefits,

Plaintiff had the option of accepting the retirement health

insurance benefits provided by Caterpillar or seeking alternate

insurance. It was clear that acceptance of the benefits provided

by Caterpillar was conditioned upon the acceptance of the terms

in the various plan documents.

Second, although Plaintiff maintains that he had no

notice of the forum selection clause, he has not pointed to any

statutory or regulatory requirement that requires the plan

administrator to give actual notice of a forum selection clause

to a plan participant or to otherwise highlight in any specific

12

way that the plan contains such a clause. Moreover, he does not contend that the forum selection clause was not in the Plan, that he did not have access to plan documents that would have contained the forum selection clause, or that he was somehow misled as to whether there existed any forum selection clause applicable to his claims. Nor does he allege that the forum selection clause was inserted into the Plan after he accepted its terms, or that he did anything to inquire into the terms of the RGIP and the information was denied by Caterpillar.

Here, where Plaintiff's participation in the Plan was wholly voluntary and Plaintiff demonstrated no interest in the terms of the Plan, Plaintiff now cannot be heard to complain that he was not on notice of the terms of the Plan, which included the forum selection clause.

Accordingly, the Court is satisfied that the forum selection clause is not fundamentally unfair and that Plaintiff received adequate notice of the presence of the forum selection clause in the Plan. The Defendant was not obligated to provide Plaintiff with a specific form of notice, and under the circumstances of this case, deficiency of notice cannot be a basis for finding the forum selection clause unenforceable. For these reasons, the Court concludes that the forum selection clause in the RGIP is valid and enforceable.

B.   No Extraordinary Circumstances Exist that Militate
     Against Enforcing the Forum Selection Clause

Next, pursuant to § 1404(a) and Atlantic Marine, the

Court must consider whether "extraordinary circumstances

unrelated to the convenience of the parties" militate against

enforcing the forum selection clause. Atl. Marine, 134 S. Ct. at

581. As explained above, Plaintiff, "as the party defying the

forum-selection clause," id. at 581, has the burden of

establishing that the situation is "extraordinary" because of

public interest factors. See id. at 581-82.

Attempting to meet this high burden, Plaintiff

contends that

> for a company like Cat[erpillar], with world-wide
> facilities employing thousands of people, to require
> such employees to travel to Peoria[, Illinois] and
> retain strange lawyers to represent them in their
> ERISA disputes with a company ready to 'go to the mat'
> over disputes it creates unilaterally with employees
> to whom it gives no notice of the existence of a
> dispute until the employee inquires as to why his/her
> health insurance premiums have shot up to 45 times
> what they were the month before--this to an employee
> like Plaintiff, who has never set foot in Peoria, let
> alone Illinois--is more than unreasonable.

Pl.'s Resp. at 3, ECF No. 7. Upon closer prodding at the

hearing, Plaintiff honed his argument to two points: first, that

forum selection clauses in general contravene ERISA's public

policy of providing ready access to the federal courts, and

second, that he faces significant physical and financial

constraints that make it difficult for him to litigate in the contractual forum. The Court will address each argument in turn.

### 1.    ERISA's Venue Provision and Public Policy

First, Plaintiff argues that ERISA precludes all forum selection clauses in the plans that it governs, because such clauses conflict with ERISA's venue provision. Pl.'s Resp. at 5, ECF No. 7. Because this is the kind of public interest that the Court may properly consider under the second step of the Atlantic Marine analysis, the Court reviews the argument below.

ERISA's venue provision provides that

> [w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

In support of his argument, Plaintiff points to only one case: Nicolas v. MCI Health & Welfare Plan No. 501, 453 F. Supp. 2d 972 (E.D. Tex. 2006), a case from the Eastern District of Texas. In that case, the court found that "the policies of the ERISA statutory framework super[s]ede the general policy of enforcing forum selection clauses" and therefore declined to enforce the forum selection clause in the ERISA plan at issue in that case. Id. at 974. The court explained that "Congress

intended that the venue provision for ERISA claimants be broad"

so as to provide them with "'ready access to the [F]ederal

courts.'" Id. (quoting 29 U.S.C. § 1001(b)). Specifically,

"Congress intended 'to remove jurisdictional and procedural

obstacles which in the past appear to have hampered effective

enforcement of fiduciary responsibilities.'" Id. (quoting H.R.

Rep. No. 93-533, at 17 (1973)). According to the Nicolas court,

enforcing the forum selection clause would undermine these

policy goals.

However, Nicolas represents the minority view as to

the enforceability of forum selection clauses in ERISA plans.

The majority of courts that have considered the issue have

enforced forum selection clauses in ERISA plans.

The Third Circuit has not yet considered whether forum

selection clauses in ERISA plans are enforceable. The only court

of appeals to have considered this issue, the Sixth Circuit,

held that ERISA plan sponsors are permitted to designate the

federal courts in which their participants may bring claims

arising under ERISA. Smith v. Aegon Cos. Pension Plan, 769 F.3d

922, 932 (6th Cir. 2014), cert. denied, 136 S. Ct. 791 (2016).

In reaching this conclusion, the Sixth Circuit began

with the proposition that "ERISA's 'statutory scheme . . . is

built around reliance on the face of written plan documents.'"

Id. at 929-30 (quoting US Airways, Inc. v. McCutchen, 133 S. Ct.

1537, 1548 (2013)). It explained that plan administrators and employers "'are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'" Id. at 930 (quoting Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 508 (6th Cir. 2004)).

       The Sixth Circuit then noted that a majority of courts that have considered the question of whether ERISA precludes forum selection clauses have upheld the validity of those clauses in ERISA-governed plans. Id. at 931 n.8 (collecting cases). As the Sixth Circuit explained, those courts generally rely on two reasons, both of which the Sixth Circuit found persuasive.

       First, ERISA's venue provision, § 1132(e)(2), is permissive, as it provides that an ERISA action "may be brought" in one of several districts. Id. at 932 (emphasis added). Such language does not mean that the parties cannot narrow the plaintiff's options to one of these venues. Indeed, "if Congress had wanted to prevent private parties from waiving ERISA's venue provision, Congress could have specifically prohibited such action." Id. at 931. A contractual forum selection clause does not infringe upon ERISA's policy to provide "ready access to the Federal courts" so long as the venue provision provides for venue in federal court. Id. (quoting 29 U.S.C. § 1001(b)).

Second, enforcing a plan's forum selection clause advances a uniform administrative scheme, as it centralizes claims under that plan in one federal court jurisdiction. Id. "'[L]imiting claims to one federal district encourages uniformity in the decisions interpreting that plan, which furthers ERISA's goal of enabling employers to establish a uniform administrative scheme so that plans are not subject to different legal obligations in different States.'" Id. (quoting Rodriguez v. PepsiCo Long Term Disability Plan, 716 F. Supp. 2d 855, 861 (N.D. Cal. 2010)).

For those two reasons, the Smith court concluded that ERISA's venue provision did not invalidate the ERISA plan's venue selection clause at issue in that case. Id. at 933.

In the instant case, Plaintiff does not explain why the Nicolas court's reasoning should prevail over the view of the majority of courts that forum selection clauses in ERISA plans are enforceable. The Court finds the reasoning of the majority position, as outlined in Smith, persuasive. Because the inclusion and enforcement of forum selection clauses in ERISA plans is not inconsistent with the language and purpose of the statute, enforcement will not be denied on that basis.

>        2.    Plaintiff's Physical and Financial Limitations

Second, Plaintiff contends that he suffers from

physical and financial limitations that will make litigating in

the Central District of Illinois burdensome for him. Pl.'s Resp.

at 1, ECF No. 7 (explaining that Plaintiff suffers from pain

which can be alleviated only by narcotic drugs), ECF No. 7; id.

at 4 (indicating that Plaintiff earned $17,340/year before he

became disabled in 1997). These circumstances, although

sympathetic, represent private factors, which the court may not

consider when ruling on a motion to transfer pursuant to a valid

and enforceable forum selection clause. See Atl. Marine, 134 S.

Ct. at 583-84. Accordingly, any physical or financial

constraints imposed on Plaintiff cannot help him to overcome the

presumption in favor of enforcing the forum selection clause.[4]

---

[4]      In Smith, the Sixth Circuit suggests that a safety
valve may still exist under the Atlantic Marine framework where
enforcing the forum selection clause might "lead to an excessive
burden on [the] ERISA litigant[]." 769 F.3d at 930 (explaining
that "a party may always challenge the reasonableness of a forum
selection clause" that "could lead to an excessive burden on
ERISA litigants"); see also Foster, 933 F.2d at 1219 (finding a
forum selection clause enforceable where the plaintiff makes a
"strong showing" that litigating the action in the contractual
forum would be "'so gravely difficult and inconvenient that he
will for all practicable purposes be deprived of his day in
court'" (quoting Bremen, 407 U.S. at 18). The Court need not
consider this issue here, because Plaintiff does not expressly
state that he is unable to travel to Illinois based on his
financial circumstances, health, or otherwise. He makes no
mention of the distance between his hometown in Hanover,
Pennsylvania, and the location of the courthouse for the Central
District of Illinois. And he does not suggest that he would be

***

Because Plaintiff has failed to overcome the presumption in favor of enforcing the forum selection cause, the Court rules that the clause should be enforced.

### C.   Defendants' Forum Non Conveniens Arguments

In the alternative, Defendants ask that this case be transferred to the Central District of Illinois or the Middle District of Pennsylvania based on forum non conveniens grounds. Defs.' Mot. Transfer at 7. Because the Court will enforce the forum selection clause, the Court need not address this argument.

## IV.   CONCLUSION

For those reasons, the Court will enforce the RGIP's forum selection clause and grant Defendants' motion to transfer this case to the Central District of Illinois pursuant to § 1404(a).

An appropriate order follows.

---

unable to find a lawyer willing and able to represent him in Illinois--a premise which is doubtful, given ERISA's fee-shifting provisions. Plaintiff therefore has not met his burden of establishing that transfer of the case from the Eastern District of Pennsylvania to the Central District of Illinois, pursuant to the RGIP's forum selection clause, would lead to an unreasonable or unjust result.